## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THOMAS CARROLL                    :    CIVIL NO. 302CV790 (PCD)
    *Plaintiff,*                  :
                                  :
    v.                            :
                                  :
KRISTINE D. RAGAGLIA, et al.      :
    *Defendants.*                 :    MARCH 3, 2005

### PLAINTIFF'S MEMORANDUM ADDRESSING ISSUES ON REMAND FROM THE SECOND CIRCUIT COURT OF APPEALS

This memorandum of law is submitted on behalf of the plaintiff Thomas Carroll in connection with the remand from the Second Circuit Court of Appeals. The Court of Appeals reversed in part the decision of this Court granting the defendants' motion for summary judgment. In its decision, the Second Circuit found that Mr. Carroll indeed has a constitutionally protected liberty interest which has been infringed upon and which must be protected by due process. Mr. Carroll's protected liberty interest involves his claim that the defendants' act of listing him as a substantiated child abuser violated his due process rights. The Second Circuit also found that "it is not clear that the procedures the state established to protect Carroll's liberty interest were constitutionally adequate." To that end, the Second Circuit remanded this case for the court to consider the effect of the delay in the availability of a hearing might have on the adequacy of due process. The Second Circuit also remanded the case for this court to consider Mr. Carroll's substantive due process claim in determining he was not entitled to an injunction.

ORAL ARGUMENT REQUESTED
NO TESTIMONY REQUIRED

# I.    MR. CARROLL HAS A LIBERTY INTEREST WHICH IS ENTITLED TO CONSTITUTIONAL PROTECTION.

Mr. Carroll's name was put on a child abuse registry the moment a mandated reporter informed the Department of Children and Families ("DCF") that she suspected child abuse.  See Conn. Regs. § 17a-101-3 (attached hereto as Exhibit 13).  There was no finding of credible evidence or reasonable cause that abuse occurred before Mr. Carroll's name was in the registry.  Id.; Conn. Gen. Stat. § 17a-101c.  While Mr. Carroll appealed this finding and a hearing contesting the substantiation of child abuse began, DCF unilaterally adjourned the hearing over Mr. Carroll's objection and never continued the hearing.   Mr. Carroll sued the defendants claiming, inter alia, that DCF's act of listing him as a substantiated child abuser violated his due process rights under the Fourteenth Amendment by, among other things, impeding his ability to pursue a career in child care.  The Second Circuit agreed that Mr. Carroll met the protectible liberty interest test set forth under Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994), in that the inclusion of his name on the child abuse registry resulted in a "stigma plus."  Carroll v. Ragaglia, 109 Fed. Appx. 459, 462 (2d Cir. 2004).

Important in the finding of "stigma plus" was not only that there be a defamatory character in the posting of the name in the registry, but that the defamatory character be combined with some other alteration in the individual's legal status.   In Valmonte, the court held that the "stigma plus" requirement was satisfied when a child abuse register defames an individual plus "places a tangible burden on her employment prospects."  Valmonte, 18 F.3d at 1001.  The plaintiff in Valmonte met this requirement because by

operation of law, the plaintiff's potential employers would be informed about her inclusion on the child registry.  Id.

The defendants argued before this court in their motion for summary judgment and before the Second Circuit in opposing the appeal that the child abuse registry was not available to the public, unlike the registry in Valmonte.  The Second Circuit explicitly disagreed with the defendants, holding that like Valmonte, "Connecticut law similarly requires that child care agencies complete background checks on prospective employees, including consulting the list of substantiated child abusers."  Carroll, 109 Fed. Appx. at 463.  Accordingly, the Second Circuit held that "A protected liberty interest is, therefore, involved in this case as it was in Valmonte."  Id.

The Second Circuit's ruling that Mr. Carroll has a protected liberty interest which has been infringed upon must pervade this court's consideration of issues on remand. The finding of a constitutionally protected liberty interest becomes even more important when it is coupled with the district court's standard of review on a motion for summary judgment.  All evidence must be viewed in the light most favorable to Mr. Carroll.  Mack v. Otis Elevator Co., 326 F.3d 116, 119 (2d Cir. 2003).  This court should not allow summary judgment to enter unless "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Given the finding of a constitutionally protected liberty interest which has been infringed upon, there are significant factual disputes between the parties.  Accordingly, summary judgment should not enter against Mr. Carroll for his substantive due process claims, for both monetary damages and for injunctive relief.

## II.   THE DEPARTMENT OF CHILDREN AND FAMILIES' PROCEDURES WERE NOT CONSTITUTIONALLY ADEQUATE TO PROTECT MR. CARROLL'S LIBERTY INTEREST.

The Second Circuit stated it "is not clear that the procedures the state established to protect Carroll's liberty interest were constitutionally adequate." Carroll, 109 Fed. Appx. at 462.  Thus, it remanded the case back to this court "to consider the effect of the delay in Carroll's hearing on the adequacy of due process in his case." Id.  The procedure used by the state regarding the timeliness of the hearing is laden with disputed facts between the parties.  Given the Second Circuit's statement of "the importance for due process purposes of the timeliness of a hearing," and consideration of the facts in the light most favorable to Mr. Carroll, summary judgment should not enter in favor of the defendants on this issue.

It is a fundamental tenet of due process that, when the government deprives an individual of a protected property interest, that individual must be afforded not only adequate notice but also a reasonable opportunity to be heard.  See Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  In Mathews, the Supreme Court articulated a three-factor test for evaluating administrative procedures, requiring examination of: (1) the nature of the private interest affected by the official action; (2) the risk of error and the effect of additional procedural safeguards; and (3) the governmental interest.  See Valmonte v. Bane, 18 F.3d at 1003.  Courts must balance these factors to determine "when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." Id.  The plaintiff concedes that in certain circumstances, an abbreviated pre-deprivation hearing will suffice provided that the government offers

within a reasonable time a more complete opportunity to be heard.  See Fed. Deposit Ins.

Corp. v. Mallen, 486 U.S. 230. 240 (1988).  The constitutionality of such schemes,

however, frequently turns on the availability of sufficiently prompt and adequate post-

deprivation hearings.

The Second Circuit has already held that in a situation where, as here, a plaintiff

has a liberty interest in securing future employment in the child care field free from the

defamatory label placed upon him by the state, the plaintiff has a legitimate interest in

pursuing his chosen occupation.  See Valmonte, at 1003 citing Greene v. McElroy, 360

U.S. 474, 492 (1959).  Likewise, the state has a significant interest in protecting children

from abuse.  Valmonte, at 1003.   The disputed factor in this case is the procedures

afforded to individuals who are placed on the state's child abuse registry, and

specifically, the procedure afforded to Mr. Carroll.

Mr. Carroll's name was placed on the child abuse registry on October 10, 2000,

the same day John Doe accused him of abuse.   There was no investigation before Mr.

Carroll's name was put on the registry.  Rather, upon the written report of a mandated

reporter to DCF that the reporter "has *reasonable cause to suspect or believe* that any

child under the age of eighteen years has been abused . . . or has had nonaccidental

physical injury, or injury which is at variance with the history given of such injury,

inflicted on him by a person responsible for such child's health . . . or has been neglected

. . . ."; see Conn. Gen. Stat. § 17a-101a; Mr. Carroll's name was automatically put on the

registry.  See Conn. Regs. 17a-101-3.   Connecticut Regulations Section 17a-101-1, et

seq. governs the "use and operation of the child abuse and neglect registry."  Section 17a-

101-3 states that "All information required by sec. 17a-101-9 [the log of inquiries] shall be placed in the registry *immediately upon receipt of a written report of suspected child abuse* as required by section 17a-101c." (emphasis added.)  Section 17a-101c of the General Statutes provides that mandated reporters must file written reports of child abuse. In Mr. Carroll's case, a written report was filed October 10, 2000 by a mandated reporter at the Connecticut Children's Medical Center.  (Ex. A, Laura Curran Aff., Ex. cc and dd).[1]  This caused Mr. Carroll's name to be placed on the registry, which at this point is available to the public.  Carroll 109 Fed. Appx. at 462.

After Mr. Carroll's name was placed on the registry, Defendant Curran conducted her investigation to determine whether the child abuse accusation should be substantiated. She did this using a "reasonable cause" standard.  (Ex. 8, DCF Policy, § 34-3-6).[2]   Once a person is substantiated a child abuser, he can appeal the decision and obtain a hearing on the substantiation.  The substantiation is reviewed under a "fair preponderance of the evidence standard."  (Ex. Q, DCF Policy § 22-12-7).   The DCF "policy" regarding substantiation hearings is solely a creature of DCF.  The legislature has not approved or endorsed DCF's "policy" regarding substantiation hearings.  (Ex. S).   Indeed, when DCF sought legislative approval of the policy regarding substantiation hearings, the legislature rejected the policy.  (Id.)  DCF still uses this "policy", however, which is essentially identical to the policy rejected by the legislature.  (Compare Ex. Q with Ex. S).  Thus the DCF proposes that Mr. Carroll participate in a hearing process where there are no

---

[1] Exhibit A can be found in the Appendix in Support of Defendants' Motion for Summary Judgment dated July 16, 2003.
[2] Exhibit 8 can be found in the Plaintiff's Exhibits in Support of His Memorandum of Law in Opposition to Motion for Summary Judgment dated August 29, 2003.

standards approved in accordance with Connecticut's statutory and regulatory requirements.

The reasonable cause standard employed by mandated reporters and child abuse investigators is a meager evidentiary threshold. Mr. Carroll's name was put on the child abuse registry because a mandated reporter had "reasonable cause to suspect or believe" abuse occurred. Conn. Gen. Stat. § 17a-101a. This requires a reporter only to ascertain the bare minimum of credible evidence to support suspicions of abuse. Adriani v. Commission on Human Rights & Opportunities, 220 Conn. 307 (1991). "Reasonable cause" requires a lesser showing than the preponderance of the evidence standard. Id. at 316. It "is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, in entertaining it." Id. at 316. The Second Circuit has held that a similar low standard of proof, versus a fair preponderance of the evidence standard, poses an unacceptably high risk of error. Valmonte, 18 F. 3d 992.

Mr. Carroll could not obtain a review of the substantiation of child abuse until a substantiation hearing occurred. Only then does Mr. Carroll face a "preponderance of the evidence" standard. (Ex. Q, DCF Policy § 22-12-7). In its decision remanding the case to this court, the Second Circuit cautioned that there are cases which "demonstrate the importance for due process purposes of the timeliness of a hearing based upon a 'preponderance of the evidence' standard when an individual has already been listed as a substantiated child abuser in an *ex parte* proceeding." Carroll, 109 Fed. Appx. at 462.

In <u>Lyon v. Dep't of Children and Family Servs.</u>, 209 Ill. 2d 264, 807 N.E.2d 423, 282 Ill Dec. 799 (Ill. 2004), the Illinois Supreme Court determined that an individual's due process rights are violated by the use of a low standard of proof to indicate a report of child abuse and to resolve a first-stage appeal when combined with delays in the final resolution of the administrative appeal.  209 Ill.2d at 283.  In that case, the plaintiff was put on a child abuse registry based upon a credible evidence standard and had his hearing delayed for a couple of months.  The final decision regarding child abuse did not occur until 27 days past the statutory deadline.  <u>Id.</u> at 277.  Likewise, in <u>Doyle v. Camelot Care Ctrs., Inc.</u>, 305 F.3d 603, 619 (7th Cir. 2002), the Seventh Circuit faced a similar situation with a plaintiff placed on a child abuse registry under a low standard of evidence with a delay in post-deprivation hearings.  In that case, the Seventh Circuit found that the state failed to afford the plaintiff due process because of an 11 month delay between the request for a substantiation hearing and the occurrence of the hearing.  <u>Id.</u>

The right to be free from unreasonable delay in the timeliness of a post deprivation hearing is clearly established.   The Due Process Clause requires provision of a hearing "at a meaningful time."  <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1956).  At some point, a delay in the post-termination hearing would become a constitutional violation. <u>See</u> <u>Barry v. Barchi</u>, 443 U.S. at 66.  The Supreme Court has held that it is necessary that individuals be assured a prompt post deprivation hearing, "one that would proceed and be concluded without appreciable delay."  <u>Id.</u>

In <u>Barry</u>, the Supreme Court was faced with a New York agency which suspended the plaintiff's horse trainer license.  Under § 8022 of the New York Unconsolidated

Laws, a suspended licensee was entitled to a postsuspension hearing, but the suspension would remain in effect and § 8022 specified no time in which the hearing must be held. Id. at 61.  Without resorting to the § 8022 procedures, the trainer filed a lawsuit in district court alleging a violation of his due process rights.  Id.  The Court agreed it was clear that the plaintiff had a property interest in his license sufficient to invoke the protection of the Due Process Clause.  Id. at 64.  The Court also found that the presuspension procedures were satisfactory.  Id. at 66.   However, the Court concluded that the post deprivation hearing was inadequate because "the provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues between Barchi and the State.  Id.   The Court reasoned that "Once suspension had been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount, it seems to us.  We also discern little or no state interest, and the State has suggested none, in an appreciable delay in going forward with a full hearing."  Id.  Given that is was necessary that the trainer be assured a prompt postsuspension hearing, and because the statute as applied was deficient in that respect, the trainer's suspension was constitutionally infirm under the Due Process Clause of the Fourteenth Amendment.  Id. at 66.

Thus, the question before this court becomes whether Mr. Carroll had a post deprivation hearing within "a meaningful time."  Manzo, 380 U.S. at 552.  Mr. Carroll was not given a prompt administrative hearing, like the trainer in Barry.  Also, like the statutory scheme in Barry, the DCF "policy" does not specify a time in which a hearing must be held.  See Ex. Q.  That alone justifies a finding that the addition of Mr. Carroll's

name on the child abuse registry was constitutionally infirm under the Due Process

Clause. See Barry, 443 U.S. at 66. Also, unlike the courts in Lyon and Doyle, this court

is not faced with a delay of a few months for a post deprivation hearing. It is undisputed

that while a hearing began in this matter, it was adjourned by the defendant DCF over

Mr. Carroll's objection, never to be continued. Accordingly, to date, there has been a

delay of over *four years* from the request for a substantiation hearing.

 The plaintiff established in his memorandum in opposition to summary judgment,

that the substantiation hearing was stopped over his objection. (Plaintiff's Memorandum

of Law in Opposition to Summary Judgment, at 15-16 and Ex. 12). Mr. Carroll requested

that the hearing proceed, but that request was denied by DCF. The defendants

maintained in their motion for summary judgment, and before the Second Circuit, that it

was up to Mr. Carroll to request that the substantiation hearing be continued after the

criminal proceeding against him had ended. Indeed, this court found it to be significant,

in several points of its decision granting summary judgment, that Mr. Carroll "waived"

the administrative hearing by not requesting its resumption after the criminal proceeding

was resolved. However, the Second Circuit was not persuaded by the defendants'

argument. Moreover, the Second Circuit stated that despite the fact that the district court

analyzed the "waiver" issue at several points in its decision, the district court "did not

consider the effect that the delay in the availability of a hearing might have on the

adequacy of due process." Carroll, 109 Fed. Appx. at 462.

 There was a delay of seventh months from the time DCF unilaterally terminated

the hearing and the conclusion of the criminal proceeding. This delay was unreasonable

in light of the fact that Mr. Carroll requested that the hearing be continued and because he had a significant protected liberty interest at stake.   Furthermore, DCF has maintained Mr. Carroll's name on the registry and has not resumed the hearing in over four years.  In the meantime, the public has access to the child abuse registry.  Carroll, 109 Fed. Appx. at 462.  This four year delay is also *per se* unreasonable in light of the fact that Mr. Carroll objected to the termination of the hearing and because he has a significant protected liberty interest at stake.

In considering the delay, in the light most favorable to Mr. Carroll, the court must consider Mr. Carroll's strenuous objections to the termination of the hearing.  See Memorandum in Opposition to Summary Judgment, at 15-16.   The court must also consider that DCF had no approved procedures governing its hearing process.  The so called "DCF policy" also did not provide any mechanism or procedure for continuances in cases such as Mr. Carroll's case.

In addition, Mr. Carroll did immediately provide notice to defendant Ragaglia of the disposition of his criminal case.  See Affidavit of Marion Manzo attached hereto as Exhibit 14 (hereinafter "Manzo Affidavit").  Mr. Carroll, through his attorney, requested a meeting with defendant Ragaglia or such persons she may designate to review Mr. Carroll's situation and resolve it.  See Manzo Affidavit, Ex. A, Letter dated November 16, 2001.  AAG Susan Pearlman, defendant Ragaglia's designee, wrote to Mr. Carroll's attorney that "DCF is prepared to reconvene a substantiation hearing to review the investigation findings and this can be done expeditiously."  See Manzo Affidavit, Ex. C. DCF did not reconvene the hearing however.

11

Mr. Carroll's attorneys met with AAG Susan Pearlman on February 8, 2001.  See Manzo Affidavit, ¶ 6-7.   At this meeting Mr. Carroll's attorneys and AAG Pearlman discussed resolution of the situation between Mr. Carroll and DCF.  Id.  They also discussed the resumption of the administrative hearing regarding the substantiation of child abuse.  Id.  Attorney Wade stated to AAG Pearlman that "the ball's in your court" regarding the resumption of the hearing. Id.   After the meeting AAG Pearlman offered a settlement in writing and also noted that "the agency is still willing to reconvene the substantiation hearing upon request." Id., Ex. E.  Mr. Carroll's attorney thereafter invited DCF to reconvene the hearing.  Id.,  Ex. F.  Attorney Wade noted in response to AAG's offer to reconvene the hearing that Mr. Carroll objected to any deferral of the then on-going hearing and was prepared to appear on its scheduled continuation date.  Id. Attorney Wade also noted in response to the offer to reconvene the hearing that "what DCF does from his point forward it does at its own peril and without a waiver of any rights Mr. Carroll has.  We will respond accordingly if the need arises."  Id.  In other words, Mr. Carroll notified defendant Ragaglia's designee that he was prepared to go forward with the substantiation hearing.   The substantiation hearing, however, was never reconvened as offered.  Mr. Carroll then filed his lawsuit on May 7, 2002.

The defendants have provided no justifiable reason as to why they never reconvened the hearing in this matter.  Rather, they blame Mr. Carroll and claim it was incumbent upon him to request the hearing.  However, Mr. Carroll did request that the on going hearing proceed.  The first time he made his request was immediately after the defendants unilaterally terminated it over his objection.  The second time he made it

evident he was prepared to continue the hearing was after his criminal case was over.

The defendants can point to no governmental interest which would justify their refusal to

continue the hearing.    See Barry, 443 U.S. at 66.    Like Barry, Mr. Carroll's interest in a

speedy resolution is paramount.    Id.    Mr. Carroll has not received the "prompt

proceeding and prompt disposition of the outstanding issues" in a post-deprivation

hearing, which the Supreme Court has stated is necessary.    Id.

Balancing the interests of the state and Mr. Carroll under the Mathews v. Eldridge

standard, the Second Circuit has held that "the two interests at stake are fairly evenly

balanced."    Valmonte, at 1005.    However, the Mathews factor involving "risk of an

erroneous deprivation of [the private] interest through the procedures used" tilts the

balancing test heavily in Mr. Carroll's favor.    DCF's use of an evidentiary standard less

than "a fair preponderance of the evidence" results in many individuals being placed on

the child registry who do not belong there.    Valmonte, at 1005.    The delay involved in

Mr. Carroll's case, when case precedent clearly establishes the some form of hearing is

necessary "at a meaningful time", also weighs heavily in Mr. Carroll's favor.    Moreover,

the risk of erroneous deprivation is in Mr. Carroll's favor because the criminal charges

against him were dismissed by the superior court.  (Ex. I).  Accordingly, there is a strong

likelihood that the deprivation of Mr. Carroll's liberty interest is without basis.    DCF's

procedures or lack thereof have violated Mr. Carroll's due process rights.[3]

At the very least, however, there are material issues of fact in dispute regarding the

delay which has occurred which prevents summary judgment from entering in this case.

---

[3] Also, as stated infra, even if the hearing had continued, it would have been futile.

The court cannot at this point conclude that the delay in Mr. Carroll's case was reasonable.   The Second Circuit has previously held in considering a claim of due process violations that "[a]lthough no bright-line rule exists for determining when a delay is so burdensome as to become unconstitutional, we think that there is at least a question of fact as to whether these delays were egregious and without any rational justification. Given the case-by-case approach required in due process cases, *see Eldridge,* 424 U.S. at 344, the issue must be determined on a full evaluation of all the circumstances." Kraebel v. New York City Dept. of Housing Pres. & Dev., 959 F.2d 395, 405 (2d Cir. 1992).

## III.    A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER MR. CARROLL IS ENTITLED TO INJUNCTIVE RELIEF.

The Second Circuit has also remanded this case because the district court did not consider Mr. Carroll's substantive due process clam in determining he was not entitled to an injunction.   Carroll, 109 Fed. Appx. at 463.   In his prayer for relief in the complaint, Mr. Carroll seeks an "injunction ordering the Defendants to expunge all DCF records reflecting or relating to the Thomas Carroll October 9, 2000 incident."   This would include taking Mr. Carroll's name off the child abuse registry maintained by DCF.   Mr. Carroll's claim for injunctive relief is not barred by any governmental immunity, including qualified immunity.   Because the Second Circuit has held that Mr. Carroll has established an infringement and deprivation of his liberty interest, Mr. Carroll's claim for injunctive relief must withstand the defendants' motion for summary judgment.

It is well established that the doctrines of qualified immunity, sovereign immunity and absolute immunity do not apply to claims seeking injunctive relief.   See Adler v.

Pataki, 185 F.3d 35, 48 (2d Cir. 1999) ("qualified immunity shields the defendants only from claims for monetary damages and does not bar actions for declaratory or injunctive relief."); Wood v. Strickland, 420 U.S. 308, 315 n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Krozser v. New Haven, 212 Conn. 415, 421 (1989) ("the state cannot use sovereign immunity as a defense in an action for declaratory or injunctive relief.")[4]; Doe v. Heintz, 204 Conn. 17, 31-32 (1987) ("We have excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with judgment."); Heimbach v. Lyons, 597 F.2d 344, 347 (2d Cir. 1974) (claims for injunctive relief are not barred by absolute immunity.)

The district court only addressed Mr. Carroll's prayer for injunctive relief in one paragraph of its decision granting summary judgment in this case. The court accurately noted that "[g]enerally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit. Patsy v. Board of Regents of Florida, 457 U.S. 496, 515 (1982)." Ruling on Defendants' Motion for Summary Judgment, at 31. The court then proceeded dismiss Mr. Carroll's claim for injunctive relief by noting that the Patsy holding does "not apply to a procedural due process suit if the plaintiff

---

[4] Sovereign immunity is also not a bar to claims against the defendants in their individual capacities. See Martin v. Brady, 261 Conn. 372, 374 (2002); Miller v. Egan, 265 Conn. 301, 319 (2003) ("State employees do not, however, have statutory immunity for wanton, reckless or malicious actions, or actions not performed within the scope of their employment. For those actions, they may be held personally liable, and a plaintiff who has been injured by such actions is free to bring an action against the individual employee.")

failed to avail himself or herself of the right not be heard, which is the very right allegedly denied." Id.   First, as previously mentioned, Mr. Carroll *did* avail himself of the administrative proceeding offered by DCF, but it was unilaterally adjourned despite his objection.  Second, the administrative proceeding would have been futile because Mr. Carroll was denied any meaningful discovery and was denied the opportunity to question his accuser in any way.   Third, the district court did not address or dismiss Mr. Carroll's claims for injunctive relief under any other claims asserted in Count Three for Section 1983 violations.  Mr. Carroll's claims for equitable relief under Section 1983 for violations of substantive due process and impeding Mr. Carroll's ability to pursue a career remain untouched by the district court.

For the reasons set forth in his opposition to the motion for summary judgment, Mr. Carroll has provided sufficient evidence to show there are material facts in dispute regarding his claims for injunctive relief.  The defendants retaliated against Mr. Carroll for his complaints against them.  Retaliation against Mr. Carroll, by having him substantiated as a child abuser and stigmatized on a child abuse registry is shocking to the conscience.   Ms. Fritz was mad and angry at Mr. Carroll for his complaints against her and DCF.   She had no desire to learn about RAD and John's problems.  (Carroll Aff. ¶ 12-13; Ex. 2, Carroll Depo. at 109)  While Ms. Fritz claims she knew about RAD, her program supervisor Christine Lau, had to call Dr. Ruppenicker and ask her to give Ms. Fritz information on RAD.  (Ex. 3, Ruppenicker Depo., at 100)  This alone suggests that DCF did not have the training or information necessary to understand John's disorder. When Ms. Curran called Ms. Fritz to get background information on Mr. Carroll, Ms.

16

Fritz mentioned Mr. Carroll's complaints against her and DCF. (Ex. 7, Curran Depo. at 146) It is reasonable to infer that this conversation was not as informative as it was meant to be, that Ms. Fritz cast Mr. Carroll in a negative light and did not disclose factual accounts of previous false allegations of child abuse because she was angry and Mr. Carroll. Indeed, when asked by Mr. Carroll to explain John's history to Ms. Curran, Ms. Fritz shook her head and refused to say anything. She also told others about the substantiation of child abuse and used the threat of taking away someone's child to prevent her from contacting Mr. Carroll. She also refused to return calls of Dr. Ruppenicker, who was known to side with the Carrolls.

Ms. Fritz's anger set off a chain reaction against Mr. Carroll by tainting Ms. Curran, who did not bother to perform an adequate review of the file before beginning her investigation. She claims that she consulted numerous people before substantiating abuse, yet she made up her mind the *same day* she heard about the allegation of abuse and her supervisor claimed they were "**definitely**" substantiating abuse the morning after they received the allegation. (Ex.9; Curran Depo. 188-190) Ms. Curran has exhibited her desire to justify her actions by testifying as to new injuries which were not seen or reported by anyone else, and which she does not refer in her affidavit in support of summary judgment.

As stated previously, Mr. Carroll was not provided an administrative hearing to contest the substantiation. The over four year delay for a hearing is entirely the DCF's own doing. Defendant Ragaglia was informed that Mr. Carroll's administrative hearing was adjourned over his objection. See Manzo Affidavit, Ex. A. She was also informed

17

that in September of 2001, all criminal charges against Mr. Carroll were dismissed.  Id.
While Mr. Carroll was told that the hearing could be reconvened, and Mr. Carroll's
attorney invited the hearing to be continued, the hearing never reconvened.  Id. at ¶¶ 6-7
and Ex. F.

Nonetheless, given the risk of erroneous deprivation evident in DCF's scheme of
substantiation hearings, with Mr. Carroll's limited ability to obtain discovery and
confront accusers, the hearing which should have been provided would not have been
sufficient in any case.  See Ex. 1, Carroll Aff., ¶ 19; Ex. Q, DCF Policy 22-12-7.   As Mr.
Carroll stated in his affidavit submitted in his opposition to summary judgment, which
the court must accept as true, DCF did not provide sufficient discovery to Mr. Carroll
despite his requests for documents.  The only document Mr. Carroll was given from an
extensive file on John was a redacted version of the investigation protocol.  (Ex. 1, at ¶
19)  The protocol was heavily black lined to protect John.  (Id.)  It black lined many of
Ms. Curran's notes of conversations because it was "confidential."  (Id.)   Accordingly,
Mr. Carroll did not have sufficient information for his attorney to contest the results of
the investigation.   Mr. Carroll was also told that he could not confront his accuser: he
was not going to be allowed to ask John any questions or hear him testify in any way.
(Id.)  Ironically, it was not until Mr. Carroll was arrested that he was able to obtain DCF
documents on John.  (Id. at ¶ 21).

The aforementioned actions by the defendants also demonstrate there are issues of
material fact as to whether the defendants were wanton and in excess of their statutory
authority – thus entitling Mr. Carroll to injunctive relief.  The Connecticut Supreme

Court has warned Connecticut DCF caseworkers that their actions which are in excess of their statutory authority will expose them to liability for non-monetary damages. <u>See</u> <u>Shay v. Rossi</u>, 253 Conn. 134 (2002) (reversed on other grounds regarding monetary relief). The Connecticut Supreme Court states that:

> In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . .

<u>Shay</u>, 253 Conn. at 181.

Mr. Carroll's allegations and supporting facts may fairly be characterized as showing a state of consciousness regarding the consequences of the defendants' conduct that was more than negligence or gross negligence. The defendants' conduct could be found to indicate a reckless disregard Mr. Carroll's rights because Ms. Fritz was mad about Mr. Carroll's constant complaints and she acted out against him in anger.

At the very least, there are issues of material fact in dispute which would prevent summary judgment being granted against Mr. Carroll on his claims for injunctive relief. In dismissing Mr. Carroll's claim for injunctive relief, the district court did not take disputed facts into consideration outside of the realm of qualified immunity. Since qualified immunity is not a bar to Mr. Carroll's claim for injunctive relief, the court must

consider Mr. Carroll's claims without the deference given to the defendants under a qualified immunity defense standard.   See <u>African Trade & Info. Ctr. v. Abromaitis</u>, 294 F.3d 355, 360 (2d Cir. 2002) (holding that qualified immunity is not a defense to an action seeking injunctive relief).  To that end, even if this court finds in considering the delay Mr. Carroll has faced in receiving his administrative hearing, that the right to a prompt hearing was not "clearly established", the court must nonetheless consider the violation of the right in Mr. Carroll's claim for injunctive relief.  The violation of a "clearly established right" is only necessary to overcome the defense of qualified immunity. <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Given that Mr. Carroll was entitled to a "prompt" hearing at a "meaningful time", <u>see</u> cases cited infra, for the deprivation of his liberty interest, it is clear that summary judgment should not be granted for Mr. Carroll's claim for injunctive relief.  Mr. Carroll was not given a prompt hearing, indeed, he was not given a hearing at all.  In the interim, Mr. Carroll's name is on a child abuse registry which the Second Circuit found is accessible to the public.  Mr. Carroll's prayer for relief to have his name removed from the registry should not be dismissed by the court at this stage of the litigation.

THE PLAINTIFF,
THOMAS J. CARROLL


By_____
James A. Wade (ct 00086)
Marion Manzo (ct 22068)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent by U.S. mail postage prepaid to the following on this 3rd day of March, 2005.

John E. Tucker, Esq.
Assistant Attorney General
MacKenzie Hall
110 Sherman St.
Hartford, CT  06105

_____
Marion Manzo