**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| THOMAS CARROLL | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 302CV790 (PCD) |
| | : | |
| v. | : | |
| | : | |
| KRISTINE D. RAGAGLIA, et al. | : | |
| *Defendant* | : | MARCH 16, 2005 |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW

### INTRODUCTION:

This supplemental brief is submitted pursuant to the Court's order dated February 17,

2005  directing the parties to address two narrow issues on remand from the Second Circuit

Court of Appeals.   The issues concern the decision of an administrative hearing officer, who is

not a named defendant in this litigation,  deferring a civil administrative hearing until criminal

charges relating to child abuse were adjudicated or resolved.   The administrative hearing was

stayed for seven months until the criminal charges were dismissed on September 12, 2001.

During that seven month period,  the plaintiff's name was listed on a registry to which the

general public had no access; see Conn. Gen. Stat. § 17a-101k;  and criminal proceedings were

held that were open to the public.  As detailed below, the plaintiff's claim of constitutional harm

is without merit.

### NATURE OF THE PROCEEDINGS:

The plaintiff filed this action against two social workers employed by the Department of

Children and Families and the former commissioner of the Department.  The plaintiff alleged the

violation of 42 U.S.C. §1983 and several state law tort claims, raising a multitude of claims.  The

District Court (Dorsey, J.) granted summary judgment in favor of the defendants on all counts. *Carroll* v. *Ragaglia*, 292 F. Supp. 2d 324 (D. Conn. 2003).

The plaintiffs appealed to the Second Circuit Court of Appeals. The central claim in the District Court and on appeal was that the child welfare investigation conducted by the investigative social worker was "shocking to the conscience" because the social worker defendants acted with malice. At oral argument and in his brief filed in the Second Circuit Court of Appeals the plaintiff abandoned his claim against the former commissioner, leaving the two social workers as defendants. The Second Circuit Court of Appeals issued a summary order filed September 16, 2004 quickly disposing of the central issue in the case as presented by the plaintiff: "In light of the reasonableness of the determination that abuse had occurred . . . . We . . . hold that the district court properly granted summary judgment for the defendants on the basis of qualified immunity on Carroll's claim that the DCF investigation was shocking to the conscience." *Carroll* v. *Ragaglia*, 109 Fed. Appx. 459, 2004 U.S. App. LEXIS 19431 (2004).

The Second Circuit then stated: "It is not clear that the procedures the state established to protect Carroll's liberty interest were constitutionally adequate. The district court did not consider the effect that the delay in the availability of a hearing might have on the adequacy of due process." The Second Circuit remanded the case to the district court with instructions to consider the "effect of the delay in Carroll's hearing on the adequacy of due process in his case" and the plaintiff's "substantive due process claim" in determining whether he was entitled to injunctive relief. *Id.*

The District Court specifically found that the defendants had no personal involvement in the scheduling of the hearing and, in any event, there was no clearly established law upon which to impose individual liability with regard to the plaintiff's potential interest in child-related

employment. *Carroll* v. *Ragaglia*, 292 F. Supp. 2d 324, 336-337, 342 n. 16 (D. Conn. 2003). The plaintiff did not challenge these holdings on appeal. Thus, the case against the individual defendants is over, leaving only a claim against the State of Connecticut, Department of Children and Families for injunctive relief.

The plaintiff filed a motion requesting an award of costs as the prevailing party on appeal. On October 12, 2004, the Second Circuit denied the plaintiff's motion.

## **BACKGROUND:**

The plaintiff, Thomas J. Carroll, instituted this action against several employees of the State of Connecticut, Department of Children and Families (hereinafter "DCF" or the "Department"). The plaintiff named as defendants: Kristine D. Ragaglia, former Commissioner of DCF; Judith Fritz, a treatment social worker and Laura Curran, an investigative social worker. Each defendant was sued in her individual and official capacities.[1] The plaintiff alleged the violation of 42 U.S.C. § 1983 and various state law claims. The plaintiff sought money damages and a "mandatory injunction ordering the Defendants to expunge all DCF records reflecting or relating to" an incident of abuse that occurred on October 9, 2000.

The substance of the plaintiff's claim is as follows. Thomas Carroll and his wife, Lydia Carroll, were foster parents for a special needs child, committed to DCF, and referred to as "John" in the plaintiff's complaint. On October 10, 2000, John, who was then nine years old, disclosed that on the evening of October 9, 2000 the plaintiff grabbed him, struck him on the back of the head, and choked him after an argument over cleaning his room. The plaintiff was interviewed and denied the allegation of physical abuse. After investigation, defendant social

---

[1] The plaintiff also named Dawn Doty, a former treatment social worker. Ms. Doty was no longer employed by DCF at the time this lawsuit was filed. She was dismissed from the lawsuit, and that decision was not challenged on appeal.

worker investigator Laura Curran, in consultation with her superiors, determined that the plaintiff was the perpetrator of physical abuse.

The undisputed facts established that the foster child, John, disclosed abuse to the school nurse, the school social worker, the DCF investigative social worker, a state trooper, and two emergency room physicians at the Connecticut Children's Medical Center in Hartford. The child was examined by two emergency room physicians, who opined that the child's injuries were consistent with the child's account and were not self inflicted. Their diagnosis was physical abuse. The social worker investigator interviewed (either by telephone or in person) the child, the foster parents, the DCF treatment social worker, a doctor from the child's pediatric group, the child's therapist, the school social worker, the school nurse, the school principal, an emergency room physician and reviewed (many but not all) DCF records relating to John's case to get additional background. As determined by the District Court based upon the undisputed facts and as affirmed by the Second Circuit Court of Appeals, the investigation and the conclusion that the child was abused were objectively reasonable. See *Carroll* v. *Ragaglia*,109 Fed. Appx. 459, 2004 U.S. App. LEXIS 19431 (2004).

The plaintiff contended that he was "denied" an administrative hearing (also referred to as a "substantiation hearing") to challenge the substantiation of abuse. [2] As permitted by DCF Policy the substantiation hearing was deferred in light of the pending criminal charges arising out

---

[2] DCF policy provides for a two-part administrative process. (See Exhibit Q) First, upon receipt of a request for appeal, the Regional Administrator, Director of the Hotline or his or her designee, will conduct a review of the case record to determine whether DCF's decision was warranted. This review was completed by Program Director Susan O'Brien, who informed the plaintiff that the original substantiation would be upheld. (Exhibit G, Admission, ex 2) Second, the plaintiff has the opportunity to request an administrative hearing, at which time he would be afforded the opportunity to present evidence, cross examine witnesses, etc. The delay which the plaintiff claims was improper in this case concerns the second part of this administrative process.

of the same incident on October 9, 2000. [3]  (Exhibit Q) Upon learning that the plaintiff was

arrested, the hearing officer, Louis Romano,  timely notified the parties of his decision to defer

the administrative proceedings by an e-mail dated February 13, 2001 and  by letter sent by U.S.

Mail dated February 13, 2001. (Exhibit G, Admission 9, exs. d, 3)  In that letter, he stated:

"[u]pon resolution of the court proceeding, you may request to reactivate your hearing request by

sending a letter, and any necessary documentation relative to the adjudication of the [criminal]

charges" to the Division of the Administrative Law and Policy, Department of Children and

Families.[4] (Exhibit G, Admission 9, exs.d, 3)

Attorney James A. Wade, on behalf of his client, sent a  letter dated February 15, 2001 to

the hearing officer stating: "since this administrative hearing is governed by Title 4 of the

Connecticut General Statutes [the Uniform Administrative Procedures Act], we are demanding

that a record of the State's unilateral action be made so that we can pursue the appropriate

remedies in the Superior Court." (Exhibit G, Admission 11, ex e)[5]  Although the deferral was

made part of the record, the plaintiff took no action in state court. (Exhibit G, Admissions 12, 13)

Attorney Wade, on behalf of the plaintiff, moved for the criminal charges to be dismissed in

Superior Court.  He represented to the Court: "**One of the reasons we're asking for a dismissal**

**is that under the State's system there is an administrative proceeding that is still on-going,**

**that I am involved in and it involves Mr. Carroll's name being listed, list that the DCF**

**keeps and we intend to take such steps as necessary to have that erased as well**." (Ex I,

---

[3] DCF Policy § 22-12-5 provides:  "A substantiation hearing may be deferred pending the disposition of any civil, probate or criminal court proceeding arising from the allegation of child abuse or neglect or neglect which is the subject of the hearing."

[4] As a practical matter, in the absence of such a request, the hearing officer would have no way of knowing (a) whether the criminal charges were resolved or (b) whether the plaintiff still wished to proceed with the hearing.

[5] Documents attached to the request for admissions or affidavits are referenced in lower case letters to distinguish these documents from other exhibits in support of this motion.

9/12/01 Transcript) Although Attorney Wade succeeded in having the criminal charges dismissed, the plaintiff never sought to reclaim his administrative hearing to remove the plaintiff's name from the registry.  (Exhibit G, Admissions 14, 16)

The hearing officer deferred the administrative hearing on February 13,  2001 until the criminal charges were dismissed on September 12, 2001, approximately **seven months** later. The plaintiff was instructed to reactivate the administrative hearing upon the disposition of the criminal charges if he still wanted a hearing.  However, he never did so. Thus, as of the date of this writing,  there was a delay in holding a hearing of approximately **three and one-half years** resulting from the plaintiff's failure to reactivate his hearing.

**ARGUMENT:**

**I. SCOPE OF ISSUES ON REMAND.**

The District Court specifically held in connection with the plaintiff's claims for money damages relating to the alleged "denial" of a hearing and the alleged infringement of the plaintiff's right to pursue a child care career:

(1) the individual defendants had no personal involvement in the deferment of the hearing;

(2) there was no clearly established law upon which to impose individual liability under 42 U.S.C. § 1983 , therefore,  the defendants are entitled to qualified immunity;[6]  and

---

[6] In *Doyle* v. *Camelot Care Centers*, 305 F. 3d 603, 620-622 (7th Cir. 2002), a case relied on by the plaintiff and by the Second Circuit Court of Appeals,  the Court held that defendants were entitled to qualified immunity for the claim that plaintiff was denied due process because he was not afforded a timely administrative hearing to challenge the substantiation of abuse by Illinois child welfare authorities and because an improper standard of proof was applied. The Seventh Circuit held, *inter alia*,  that the law in this area was not clearly established, therefore, the defendants were entitled to qualified immunity. Although the plaintiff in the present case apparently continues to seek monetary damages, he does not claim (and could not credibly claim) that the defendants violated clearly established law.

(3) to the extent that money damages were sought against the State of Connecticut, sovereign immunity barred the claims.[7]

*Carroll* v. *Ragaglia*, 292 F. Supp. 2d 324, 336-337, 342 n. 16  (D. Conn. 2003).

These holdings were not challenged on appeal. Although the plaintiff has made a fleeting reference to monetary damages, (Pl's Memo, p. 3), this Court's holdings are not challenged or even addressed in plaintiff's supplemental memorandum of law dated March 3, 2005.   Thus, the case has ended with respect to the individual defendants.   The only matter in dispute is whether the plaintiff is entitled to injunctive relief against the Department of Children and Families.

In this Court's decision, it concluded both that the plaintiff waived any due process claim by failing to claim a hearing and that,  having failed to avail himself of the hearing process that was available, his right to procedural due process was not violated. See *Carroll* v. *Ragaglia*, 191 F. Supp. 2d at 342.   The Second Circuit did not overrule these holdings which concern the plaintiff's inaction once the criminal charges were dismissed and he was eligible to reactivate his administrative hearing .  Instead, it directed this Court to consider "the effect that the delay in the availability of a hearing might have on the adequacy of due process." *Carroll* v. *Ragaglia*, 109 Fed. Appx. 459, 2004 U.S. App. LEXIS 19431 (2004). Thus, on remand, this Court must consider whether the seven month stay of the administrative hearing (before plaintiff had a right to reactivate his hearing) violated the plaintiff's right to due process under the circumstances of this case.  As set forth below, the deferment of the hearing was consistent with due process.

---

[7] The Second Circuit did not reverse summary judgment in favor of the defendants on the state law tort claims and the state constitutional claim.

## II. STAY OF HEARING WAS NOT PREJUDICIAL.

During the seven months that the administrative hearing was stayed, criminal charges were pending. Regardless of whether the plaintiff was listed on the DCF registry, as a practical matter it is highly unlikely that the plaintiff could have successfully pursued employment in child-related fields during the pendency of the criminal charges relating to child abuse. Except for certain enumerated circumstances, the child abuse and neglect registry is confidential. Conn. Gen. Stat. § 17a-101k. However, criminal proceedings are in the public domain.

In child-related fields, prospective employers check not only the DCF registry but do a criminal history check as well. See Conn. Gen. Stat. § 17a-6a (Commissioner of DCF required to conduct criminal and child abuse registry checks of applicants for employment); Conn. Gen. Stat. § 17a-114 (b) (2) (in licensing of person for placement of child DCF must conduct criminal record check as well as child abuse registry); Conn. Gen. Stat. § 17b-749k (criminal history and child abuse registry checks required for purposes of child care subsidy program administered by Department of Social Services); Conn. Gen. Stat. §19a-80 (criminal history and child abuse registry checks required for licensure of child day care centers and group day care homes); Conn. Gen. Stat. § 19a-87b (criminal history and child abuse registry checks required for licensure of family day care homes).

As held by this Court and unchallenged on appeal, the state police conducted an independent investigation and reached an independent determination that there was probable cause to arrest the plaintiff as did a superior court judge. *Carroll* v. *Ragaglia*, 292 F. Supp. at 337.

Thus, regardless of whether the plaintiff's name was on a confidential registry, **if** the plaintiff was prevented from pursuing child-related employment, he was prevented from

pursuing such employment by the pending criminal charges in a public forum until the charges were dismissed on September 12, 2001.  Thus, the listing of the plaintiff on the registry did not result in a tangible burden on the plaintiff's employment prospects.  After the criminal charges were dismissed, an administrative hearing was available to the plaintiff to challenge the substantiation of abuse.  As this Court previously determined based on the undisputed facts, the plaintiff failed to claim a hearing. Any delay in affording the plaintiff a hearing after the criminal charges were dismissed is entirely attributable to the plaintiff's inaction.

### III.  STAY OF  HEARING DID NOT VIOLATE DUE PROCESS.

### A. Procedural Due Process Test.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . .  our prior decisions  indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976).

### B. Private Interest At Stake.

The plaintiff does not claim that he in fact applied for child-related employment and was denied a job or licensure because he was listed on the registry.  The private interest at stake is the plaintiff's potential interest in obtaining employment in child-related fields.  As noted above, as a practical matter,  during the seven month period that the stay was in effect, the pendency of criminal charges related to child abuse would have prevented him from obtaining employment in

child-related fields. "In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay . . . ." *FDIC* v. *Mallen*, 486 U.S. 230, 242 (1988). The listing of the plaintiff's name on the confidential registry for the seven month period while the criminal charges were pending had no impact on the plaintiff.

**C. Stay During Pendency Of Criminal Charges Was Consistent With Due Process.**

The plaintiff appears to concede that he was not entitled to a pre-deprivation hearing to challenge the Department's decision, but claims that the availability of a post-deprivation hearing was not sufficiently prompt. (Pl's Memo, p.9)

The Second Circuit Court of Appeals has recognized "The grave seriousness of the problems of child abuse and neglect, and the need for the state to maintain a Central Register for ensuring that those with abusive backgrounds not be inadvertently given access to children." *Valmonte* v. *Bane*, 18 F. 3d 992, 1005 (2nd Cir. 1994). It is beyond dispute that the government interest in protecting children is compelling.

The plaintiff can point to no constitutional right to have a substantiation hearing before a related criminal case is resolved as opposed to after the criminal case is resolved. Indeed, judges and, by logical extension, administrative hearing officers have wide discretion to grant continuances or to stay or defer adjudicative proceedings. See *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 459 (1985) (trial court has been "vested a large amount of discretion . . .in. . . granting stays"); *SEC* v. *Dresser Industries*, 202 U.S. App. D.C. 345, 628 F.2d 1368,1372 (D.C. Cir.) (en banc), cert. denied, 449 U.S. 993, (1980)(" the Constitution .. . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings . . . . Nevertheless, a court may decide in its discretion to stay civil

proceedings . . . 'when the interests of justice seem .. . to require such action. . . .'"). See also *Shuckra* v. *Sencio*, 2002 Conn. Super. LEXIS 3510 (October 23, 2002) (Judicial District of Hartford) ( in evaluating the "the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities . . . The public interest in the integrity of the criminal process outweighs the harm that the plaintiffs may suffer from a delay . . . in the civil matter." )

It is commonplace for administrative proceedings to be deferred until the resolution of related court proceedings.[8] See *Komlosi* v. *New York State Office of Mental Retardation and Developmental Disabilities*, 64 F. 3d 810 (2nd Cir. (1995) (no due process violation where arbitration hearing deferred pending disposition of criminal charges); *Alfaro Motors, Inc*. v. *Benjamin Ward*, 814 F. 2d 883 (2nd Cir. 1987) (no due process violation where administrative hearing on whether plaintiff was wrongfully denied taxi medallions postponed until resolution of pending criminal charges).

DCF's policy allowing the hearing officer discretion to defer administrative hearings pending the disposition of criminal charges is a rational and well founded policy. Although criminal defendants are entitled to exculpatory information, they are not, generally speaking, entitled to conduct depositions under state criminal practice. Conn. Prac. Bk. § 40-44. To allow administrative substantiation hearings to proceed before criminal proceedings would allow criminal defense counsel to use the DCF administrative hearing process to seek strategic advantage in the criminal action by allowing defense counsel to the use the administrative

---

[8] See, e.g., Sec. 5-240-5a of the Regulations of the State of Connecticut (any state employee who is the subject of criminal charges which upon conviction would constitute just cause for dismissal may seek unpaid leave for one year pending the disposition of criminal charges and thereafter additional leave may be granted based upon a showing that the pendency of the criminal charges prevents the completion of an independent administrative investigation of the underlying conduct); Sec. 12-574-E5 (g) of the Regulations of the State of Connecticut (decision on application for occupational license may be deferred "until a reasonable time after final disposition" of criminal charges).

proceeding to conduct discovery that a criminal defendant would not otherwise be entitled to. The government has a discernable interest in preventing discovery in a civil case from being used to circumvent the more limited scope of discovery in a criminal matter. *See Twenty First Century Corp.* v. *LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *Bridgeport Harbour Place* v. *Ganim*, 269 F. Supp. 2d 6 (D. Conn. 2002); *Rocque* v. *Sound Manufacturing, Inc*., 76 Conn. App. 130, *cert. denied*, 263 Conn. 927 (2003).

Furthermore, if the substantiation hearing takes place  before the criminal trial, it places before the criminal defendant the "Hobson's Choice" of invoking his Fifth Amendment right to remain silent in the administrative proceeding and thereby hindering his  challenge to the substantiation versus testifying in the administrative hearing and potentially incriminating himself.  Aside from the obvious hardship this puts on the criminal defendant, having the administrative hearing go first makes the adjudicatory function of the Department more difficult because if the criminal defendant invokes his or her right to remain silent (due to the pendency of criminal charges), the Department is limited in the available information upon which the Department must render a decision.  On the other hand, if the administrative hearing is deferred pending the resolution of criminal charges, the defendant may testify freely and the DCF hearing officer may base his decision on a fuller evidentiary record.[9]

In addition to the above stated reasons,  the policy is consistent with judicial efficiency. If the defendant is convicted of the criminal offense arising from the same set of facts as the

---

[9] Although the plaintiff initially sought to go forward with his administrative hearing, he did not formally waive his right to remain silent. On this record it is unknown whether the plaintiff would have invoked this right at any point had the administrative hearing gone forward.

administrative case,[10] it obviates the need to hold an administrative hearing, thus saving the time, not only of the administrative hearing officer and DCF staff, but of witnesses who would have to testify at such a hearing.  In this time of budget deficits that endanger essential services provided to children and their families, the conservation of scarce resources takes on particular importance. The plaintiff has a meaningful opportunity to be heard.  He chose to ignore the administrative process that was available.

Finally, the present case is readily distinguishable from *Doyle* v. *Camelot Care Centers*, 305 F. 3d 603 (7th Cir. 2002), an Illinois case cited by the Second Circuit Court of Appeals and by the plaintiff in his supplemental memorandum. There, the child welfare authority substantiated the allegation of neglect against the named plaintiff.  The plaintiff "failed to receive formal notice of the [finding of neglect] and . . . her request for administrative hearing languished for months . . . ." *Id*., 612-613.  As a result of this finding, the named plaintiff's employment was terminated.   On appeal from the district court's granting of the defendants' motion to dismiss, the Seventh Circuit concluded that the "credible evidence" standard operating in conjunction with a "belated post-deprivation hearing, failed to afford adequate process." Notably,  unlike the present case, the defendants did not "submit that [the delay was] necessary or appropriate to achieve any legitimate governmental interest." *Id*., 619.   Notwithstanding the conclusion that the defendants violated the plaintiffs' right to procedural due process, the Seventh Circuit affirmed the district court's judgment under, *inter alia*,  the doctrine of qualified immunity.

---

[10] The DCF administrative process requires that DCF prove the substantiation by a fair preponderance of the evidence. Criminal charges must be proved by the higher standard of beyond a reasonable doubt.

In contrast to *Doyle*, as detailed above, there are very good reasons for the seven month deferral in the plaintiff's administrative case.   There is no allegation that the plaintiff did not receive notice. There is no allegation that the administrative case languished without explanation. Indeed, the Department officials offered an articulate explanation for the stay and the action taken by the hearing officer was consistent with DCF policy. (See Exhibit G, Letter from Thomas DeMatteo, Director of Division of Administrative Law and Policy dated 2/21/01, noting the plaintiff's objection and stating: "under DCF policy, the hearing officer has the discretion to defer a case under these circumstances, and I believe [the hearing officer] correctly exercised this discretion.").   Further, under the circumstances of this case,  because of the public nature of the criminal proceedings, as a practical matter regardless of whether plaintiff was listed on a confidential registry, it is highly unlikely that an employer in a child-related field would have hired the plaintiff while criminal charges were pending.   The seven month delay in obtaining a name-clearing hearing  was not unconstitutional.  *See Cleveland Bd. Of Education* v. *Loudermill*, 470 U.S. 532, 547 (1985) (nine-month length of adjudication not per se unconstitutional).

### D. Standard of Proof Did Not Violate Due Process.

"The grave seriousness of the problems of child abuse and neglect, and the need for the state to maintain a Central Register for ensuring that those with abusive backgrounds not be inadvertently given access to children."  *Valmonte* v. *Bane*, 18 F. 3d 992, 1005 (2nd Cir. 1994). The plaintiff contends that the standard for substantiation deprived him of due process.  This claim was not raised in his opposition for summary judgment or in his complaint.

If this Court is inclined to consider this claim, it is without merit. "Due Process 'is not a technical conception with a fixed content unrelated to time, place[,] and circumstances[;]'

instead, it 'is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976).

The plaintiff does not dispute that at the hearing stage, the burden is on DCF to prove that the substantiation should be upheld by a fair preponderance of evidence. DCF Policy §22-12-7 (Exhibit Q).   At the investigative stage, the investigator, in consultation with his supervisor, is required to determine whether the child abuse or neglect is either "substantiated" or "unsubstantiated". DCF Policy §34-3-6 (Exhibit R). "Substantiated" means "reasonable cause to believe that child abuse or neglect has occurred." (Id.)   Reasonable cause is synonymous with probable cause, the same standard used by state judges to determine whether a person will be arrested on criminal charges.  See *Anriani* v. *CHRO*, 220 Conn. 307, 316 (1991), citing *Ierardi* v. *CHRO*, 15 Conn. App. 569, *cert. denied*, 209 Conn. 813 (1988); Conn. Gen. Stat. §17a-101g(c). See also Blacks Law Dictionary (6th Edition), p. 1201 (defining "probable cause" as "reasonable cause . . . .")   "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules. . . The substance of all the definitions of probable cause is a reasonable ground for belief of guilt . . . and that the belief of guilt must be particularized with respect to the person to be searched or seized." (internal quotation marks and citations omitted). *Maryland* v. *Pringle*, 540 U.S. 366, 370-371 (2003).

In *Doyle*, the Seventh Circuit determined that there was a due process violation where there was an unexplained delay in conjunction with the application of the "credible evidence" standard. That standard did not require the investigator to weigh "conflicting evidence". *Doyle* v. *Camelot Care Centers*, *supra*,  at 619-620.   Here, the investigator and her supervisor considered and weighed all the evidence, including evidence favorable and unfavorable to the plaintiff.

(Exhibit A; Exhibit T) Although the present case does not involve the "credible evidence' standard, it is noteworthy that the Supreme Court of Illinois held that the application of that standard is constitutionally permissible so long as the administrative hearing is conducted under the fair preponderance of the evidence standard. *Lyon* v. *DCFS*, 807 N.E. 2d 423 (Ill. 2004). See *Lindsay* v. *Dept. of Social Services*, 439 Mass. 789 (2003). DCF's administrative hearing is conducted under the fair preponderance of the evidence standard.

In *Valmonte* v. *Bane*, 18 F. 3d 992 (2nd Cir. 1994), both at the investigation and at the administrative hearing stages, the applicable standard was the "some credible evidence" standard, which the Second Circuit found problematic.[11]   Here, the standard is "reasonable cause" at the investigative stage and "fair preponderance of the evidence" at the hearing stage. In addition, after the social worker makes the determination to substantiate in consultation with her supervisor, at the plaintiff's request, this determination is reviewed by a high level DCF official who is unconnected with the investigation. (DCF Policy §22-12-3, Exhibit Q; Exhibit G)  This procedure strikes the proper balance between the need to respond quickly to allegations of abuse and neglect in order to protect children and to provide the plaintiff a fair adjudicative process.

Finally, as discussed above, after DCF substantiated the allegation of abuse under the "reasonable cause" standard did not place a tangible burden on his employment prospects in child-related fields. As a practical matter, while criminal charges were pending in a public forum, it was highly unlikely that such employment would be available to him.  Thus, in this case, the plaintiff cannot demonstrate harm.

---

[11] The New York system described in *Valmonte* provided for two administrative hearings. The first was under the some credible evidence standard.  A second hearing was provided if the plaintiff lost his or her employment. This second hearing is conducted under the fair preponderance of the evidence standard.  Under the Connecticut system, there is one administrative hearing under the fair preponderance of evidence standard that is conducted under the UAPA.

## IV. PLAINTIFF HAS FAILED TO IDENTIFY ANY MATERIAL FACT THAT IS IN DISPUTE.

Although the plaintiff has repeatedly pronounced that there are material facts in dispute that entitle him to a trial, the plaintiff has failed to identify any particular alleged fact that is purportedly in dispute that prevents this Court from entering summary judgment in favor of the defendants.

Nonetheless, in view of the duty of candor owed to this tribunal, the defendants respond to several mischaracterizations of law and other errors in the plaintiff's brief as set forth below.

### A. Plaintiff's Exhibit 14 Is Improper.

The plaintiff attaches exhibit 14 (A to F) to his supplemental memorandum. Exhibit 14 is an affidavit by plaintiff's counsel, Attorney Marion Manzo, dated March 3, 2005 with attached correspondence between plaintiff's counsel, James A. Wade, and Assistant Attorney General Susan T. Pearlman detailing settlement discussions directed to resolving this matter. The apparent purpose of these attachments is to establish that "the ball" was in DCF's court regarding the resumption of the hearing. (Exhibit 14)[12]

Rule 408 of the Federal Rules of Evidence provides that such settlement discussions are "not admissible to prove liability for or invalidity of the claim or its amount." See *Lightfoot* v. *Union Carbide Corp.*, 110 F. 3d 898, 909 (2nd Cir. 1997) (Rule 408 bars the admission of statements and conduct made "in the course of compromise negotiations."). Exhibit 14 and attachments A to F are inadmissible and should be stricken. Even if the plaintiff's attachments

---

[12] Attorney Manzo, who avers that she was present at a settlement conference on February 8, 2002, quotes Attorney Wade, who allegedly stated to Attorney Pearlman that "the ball's in your court." The defendants object to this statement because it is inadmissible hearsay. Aside from the fact that the statement is inadmissible under Rule 408 of the Federal Rules of Evidence (see discussion, *infra*), it casts both Attorney Manzo and Attorney Wade in the role of fact witnesses, which is incompatible with their role as advocate. See Local Rule 83.13 (prohibition of counsel as witness).

17

were considered, they simply demonstrate DCF's good faith and continued willingness to provide the plaintiff a hearing in the face of the plaintiff's evasiveness and legal maneuverings.

**B. Registry Confidential From General Public.**

Although the plaintiff in his brief repeatedly proclaims that the registry is "open to the public", the relevant statute, regulations and policy refute this assertion. Conn. Gen. Stat. § 17a-101k provides in relevant part: "The information contained in the reports and any other information relative to child abuse, wherever located, shall be confidential subject to such statues and regulations governing their use and access . . . Any violation of this section . . . shall be punishable by a fine of not more than on thousand dollars or imprisonment for not more than one year." Conn. Regs. §17a-101-5. Although there are statutorily enumerated circumstances in which specified persons or entities have access to the registry, it is generally confidential from the public.[13]

The plaintiff mistakenly claims that his name was put on the registry "the moment a mandated reporter informed" DCF of suspected abuse, citing Conn. Regs. § 17a-101-3. (Pl's Memo, p. 2) However, that section provides that all "information required by Sec. 17a-101-9 shall be placed in the registry." Section 17a-101-9 requires that there be a "log of inquiries", meaning that DCF is required to record inquiries made to check the registry. It is not a log of reports of mandated reporters. Thus, the plaintiff's contention that the plaintiff was listed on the registry as soon as a mandated reported filed a report with DCF has no basis in law and is contrary to the language of the regulation the plaintiff's cites in support of this contention.

As DCF Policy clearly states, the child abuse or neglect registry (also known as the central registry) consists of names of those persons who have been substantiated as perpetrators

---

[13] Conn. Gen. Stat. § 17a-28 mandates that DCF records are confidential with certain enumerated exceptions, including law enforcement, the prosecutor's office, and certain licensing agencies.

of child abuse and/or neglect.  (DCF Policy § 33-31, Exhibit V) (attached). Current policy

provides: "Access to the Central Registry shall be limited to duly authorized Department

employees for purposes of obtaining information for  the investigation of child abuse and

neglect, background checks, and other uses permitted by law.   Prospective employers or

licensing authorities are permitted  to request background checks for any person, provided they

submit a release signed by the subject of the background check." (Exhibit V)

Once a hearing has been claimed or is pending, DCF is required to "ensure the name of

the person is not released as a confirmed perpetrator pending the outcome of the substantiation

hearing" unless release is permitted by Conn. Gen. Stat. §§ 17a-28 and 17a-101a through 17a-

101k.  (DCF Policy § 22-12-4,  Exhibit Q)  "Upon notification that a person or parent/guardian

substantiated as a perpetrator of abuse or neglect has appealed the finding, the Department shall

not disclose that the person is a confirmed perpetrator, pending the outcome of the appeal, unless

disclosure is permitted by Conn. Gen. Stat §17a-28 or 17a-101a thru § 17a-101k, or as otherwise

permitted by law." (DCF Policy § 34-15-1, Exhibit W) (attached). "In the case of a pending

appeal, or a case in which the time frame for requesting an appeal has not yet expired, the

Hotline shall only disclose that a matter is pending." *Id*.[14]   Thus, although law enforcement

officials, investigators of child abuse and neglect  and certain other enumerated persons or

entities have access to registry information; see Conn. Regs. § 17a-101-5; during the pendency of

a hearing,  DCF is not permitted to disclose to prospective employers that the plaintiff is a

perpetrator of abuse.

---

[14] Typically registry checks are handled by DCF Hotline personnel.

### C. Timeframe For Hearing.

Plaintiff contends that there is no time frame for scheduling a hearing. (Pl's Memo, p. 9) This statement is incorrect.  (See Exhibit  Q; DCF Policy §22-12-5, providing: "The substantiation hearing shall be scheduled by the hearing unit within thirty (30) calendar days of the date the request is received by the manager of the Administrative Hearings Unit." )   Thus, this case is readily distinguishable from *Barry* v. *Barchi*, 443 U.S. 55 (1979), which is cited by the plaintiff. In *Barchi*, there was no time frame for scheduling a hearing after suspension of  the plaintiff's professional.  Here, there is a thirty- day  limitation.

### V. SUBSTANTIVE DUE PROCESS NOT VIOLATED.

"Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale* v. *Town of Ridgefield*, 170 F.3d 258, 263 (2nd Cir. 1999).

Although the plaintiff protested the hearing officer's decision in two letters and demanded that a record be made of the action so the plaintiff could take action in superior court, the plaintiff took no action.  (Exhibit G).  As the plaintiff conceded in that correspondence, the hearing process is governed by the Uniform Administrative Procedure Act (UAPA).  Under the UAPA, a litigant has the right to apply to superior court for relief to the extent that he believes that the agency has not acted with reasonable dispatch. Conn. Gen. Stat. § 4-180.[15]

---

[15] Furthermore,  if the plaintiff was convinced that a hearing officer was obligated by law to complete the substantiation hearing within a particular timeframe, he was free to seek injunctive

Assuming, *arguendo*, that the hearing officer's decision to defer the hearing was error, it was plainly correctable in state court. The plaintiff failed to avail himself of the available administrative remedy.   Moreover, under the circumstances of this case, there is nothing that is "shocking to the conscience" about the hearing officer's decision to stay the administrative hearing pending the resolution of the criminal charges.

Just as he did in his original opposition memorandum to summary judgment, the plaintiff repeats in conclusory fashion that Defendants retaliated against him. (See Pl's Memo, pp. 16-17) "However, his allegations that Defendants were angry with him does not eviscerate the reasonableness of [the] investigation. Nor does he offer any proof of his conclusory allegation of retaliatory motive." *Carroll* v. *Ragaglia*, 292 F. Supp. 2d at 345 n. 18.  Many times the Supreme Court has expressed its reluctance to expand the doctrine of substantive due process, in part, because the guideposts for responsible decision making in this unchartered area are scarce and open-ended. *Chavez* v. *Martinez*, 538 U.S. 760, 775 (2003).   See *Albright* v. *Oliver*, 510 U.S. 226 (1994) (no substantive due process right to be free of prosecution without probable cause); *see also Washington* v. *County of Rockland*, 373 F. 3d 310 (2nd Cir. 2004) (plaintiff's § 1983 malicious prosecution action could not be premised on civil administrative proceeding).  The conduct of the defendants did not violate substantive due process.

Even crediting the plaintiff's allegation that one or more defendants were angry with the plaintiff, that does not mean that the plaintiff did not perpetrate abuse upon the minor child. Moreover, given the importance of the public policy of protecting children, as set forth below, at most the plaintiff is entitled to an administrative hearing to present his case, which except for a

---

relief in state court, see *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671 (1997), or a  writ of mandamus, see  *Miles* v. *Foley*, 253 Conn. 381, 391 (2000).

seven month period in which criminal charges were pending, the Department of Children and Families has never denied him.

### VI. PLAINTIFF NOT ENTITLED TO REQUESTED INJUNCTIVE RELIEF.

The plaintiff seeks expungement of "all DCF records reflecting or relating to the Thomas Carroll October 9, 2000 incident." (Pl's Complaint, Prayer for Relief) As argued above, there is no constitutional violation upon which to base an order for injunctive relief. Even if this Court were to disagree, the appropriate relief is to afford the plaintiff a hearing, which the Department has been willing to do throughout this litigation. *See Carroll* v. *Ragaglia*, 292 F. Supp. 2d at 342.

### A. Adequate Remedy At Law/Irreparable Injury.

The Supreme Court has long held that injunctive relief is an "extraordinary remedy" that should not issue as a matter of course or to restrain acts whose injurious consequences are "merely trifling." *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 311-312 (1982) (quoting *Consolidated Canal Co*. v. *Mesa Canal Co.*, 177 U.S. 296, 302 (1900)). Instead, an injunction "should issue only where the intervention of a court of equity 'is essential in order effectually to protect...rights against injuries otherwise irremediable.'" *Id*. at 312 (quoting *Cavanaugh* v. *Looney*, 248 U.S. 453, 456 (1919)). "[T]he principles of equity...militate heavily against the grant of an injunction except in the most extraordinary circumstances." *Rizzo* v. *Goode*, 423 U.S. 362, 379 (1976).

When a plaintiff seeks permanent injunctive relief from an alleged constitutional violation, he must first establish the fact of the violation. *Rizzo* v. *Goode*, 423 U.S. 362, 377 (1976); *Newman* v. *State of Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982), *cert. denied,* 460 U.S. 1083 (1983). If the plaintiff successfully makes such a showing, he must then demonstrate both a continuing irreparable injury if the injunction does not issue, and the lack of an adequate

remedy at law. *New York State National Organization For Women* v. *Terry*, 886 F.2d 1339, 1362 (2d. Cir. 1989), *cert. denied*, 495 U.S. 947 (1990).

The Connecticut Supreme Court has repeatedly held that "the procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." *Pet* v. *Department of Health Services*, 228 Conn. 651, 661 (1994). Under the UAPA, a litigant has the right to apply to superior court for relief to the extent that he believes that the agency has not acted with reasonable dispatch. Conn. Gen. Stat. § 4-180.[16] The plaintiff had the right to a full evidentiary hearing, including the presentation of witnesses and documentary evidence and the cross examination of witnesses. DCF Policy § 22-12-7. (See Exhibit Q.) A substantiation hearing must be scheduled within thirty days of the request for a hearing.[17] (Id.)

Here, DCF policy conferred upon the hearing officer significant powers to conduct the substantiation hearing, including the power to administer oaths, subpoena witnesses, require the production of documents and "take other necessary actions that will facilitate the hearing process." (DCF Policy § 22-12-7, Exhibit Q). DCF Policy imposes the burden of proof on the Department. It provides: "The issue for review in the substantiation hearing shall be whether the department's substantiation of the complainant as a perpetrator of child abuse or neglect is supported by a fair preponderance of the evidence." (DCF Policy § 22-12-7, Exhibit Q). "If the hearing officer reverses the substantiation decision of the department, the hearing officer shall direct the department to revise the department's records so the person is not substantiated as a perpetrator of abuse or neglect for the appealed case." (DCF Policy § 22-12-8, Exhibit Q).

---

[16] Furthermore, if the plaintiff was convinced that a hearing officer was obligated by law to complete the substantiation hearing within a particular timeframe, he was free to seek injunctive relief in state court, see *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671 (1997), or a writ of mandamus, see *Miles* v. *Foley*, 253 Conn. 381, 391 (2000).

[17] Plaintiff has erred in stating DCF in policy does not provide a time frame for holding a hearing. (Pl's Memo, p. 9)

If the plaintiff had sought a hearing subsequent to the dismissal of the criminal charges and was dissatisfied with the outcome, he could have brought an administrative appeal in superior court and, if necessary, sought appellate review of the superior court's decision. Conn. Gen. Stat. § 4-183. However, the plaintiff chose to ignore the administrative remedy that was available. See *Giglio* v. *Dunn*, 732 F. 2d 1133, *cert. denied*, 469 U.S. 932 (1984) (in light of plaintiff's failure to challenge alleged coerced resignation, no violation of due process).

The plaintiff appears to contend that the hearing process is inadequate because it would have been guided by agency policy and because he was afforded inadequate discovery. These issues were raised in the plaintiff's opposition to summary judgment. This Court held that in light of the plaintiff's failure to avail himself of the administrative process that was available, the plaintiff waived any claim that procedural safeguards of the hearing process were insufficient. *Carroll* v. *Ragaglia*, 292 F. Supp. 2d at 341 n. 15. The Second Circuit Court of Appeals did not overturn that holding.

In any event, it is well established that the fact that the hearing process is guided by policy rather than by regulation, does not in and of itself make the hearing process unconstitutional. *Goldberg* v. *Insurance Department*, 207 Conn. 77, 83-84 (1988); *Anziano* v. *Board of Police Commissioners*, 229 Conn. 703, 714-15 (1994). See *Teresa T*. v. *Ragaglia*, 272 Conn. 734, 753-754, 756 (2005) (Supreme Court's statutory analysis informed by DCF Policy). Likewise, the plaintiff's claim that he was provided inadequate discovery is without merit. At the time the criminal charges were dismissed, the plaintiff had DCF's full file over seven inches thick. (Exhibit N, pp. 5-6) If the plaintiff was to request a hearing at this point, he would be armed with the massive discovery obtained in this lawsuit. The plaintiff provides no reason why he is prejudiced. Even if the plaintiff elected to participate in a hearing and did not prevail, the

plaintiff does not cite any reason why such issues could not be raised in state court and, if necessary, on appeal to the state Appellate Court or Supreme Court. The plaintiff has failed to demonstrate either irreparable harm or that the remedy of an administrative hearing governed by the UAPA is inadequate.

### B. At Most, Plaintiff Is Entitled To An Administrative Hearing.

"The grant of injunctive relief is an extraordinary remedy." *Silverstein* v. *Penguin Putnam, Inc.*, 368 F. 3d 77, 84 (2nd Cir. 2004), *cert. denied*, 2004 U.S. LEXIS 8253. Injunctive relief must be narrowly tailored to fit specific legal violations. *Brooks* v. *Giuliani*, 84 F. 3d 1454, 1466- 1468 (1996); *Waldman Publishing Corp*. v. *Landoll, Inc*., 43 F. 3d 775, 785 (2d Cir. 1994); *Society For Good Will To Retarded Children, Inc.* v. *Cuomo*, 737 F. 2d 1239, 1251 (2nd Cir. 1984). Equitable relief must be "commensurate with the scope of the constitutional infraction." *Association of Surrogates and Supreme Court Reporters* v. *New York*, 966 F. 2d 75 (2nd Cir. 1992). See *Milliken* v. *Bradley*, 433 U.S. 267, 280-281 (1977) (discussing factors a federal court must consider in exercising its equitable power, including: the remedy must "be determined by the nature and scope of the constitutional violation;" and the role of state and local authorities in the management of their affairs.)

"The seriousness of federal judicial interference with state civil functions has long been recognized by this Court. We have consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence." *Huffman* v. *Pursue. Ltd*., 420 U.S. 520, 603-604 (1975).[18]

---

[18] The Eleventh Amendment bars injunctive relief in federal court against state officials based on a violation of state law. *Frew* v. *Hawkins*, 540 U.S. 431 (2004), citing *Pennhurst State School* v. *Halderman*, 465 U.S. 89 (1984). Only prospective injunctive relief based upon a federal constitutional violation is permitted. See *Edelman* v. *Jordan*, 415 U.S. 651 (1974); *Ex parte Young* , 209 U.S. 123 (1908).

"[A]ppropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo* v. *Goode*, 423 U.S. 362, 379 (1976). "The restraints of federalism must be applied not only when an injunction is sought against the judicial branch of state government, but also when an injunction is urged 'against those in charge of an executive branch of any agency of state and local government[ ].'" *Kendrick* v. *Bland*, 740 F.2d 432, 437 (6th Cir. 1984) (quoting *Rizzo* v. *Goode*, 423 U.S. 362, 380 (1976)). In such cases, "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Rizzo* v. *Goode*, 423 U.S. 362, 378 (1976) (quoting *Stefanelli* v. *Minard*, 342 U.S. 117, 120 (1951)).

Because an injunction is an exercise of equitable authority, courts "must sensitively assess all the equities of the situation, including the public interest." *Million Youth March, Inc*. v. *Safir*, 155 F. 3d 124, 125 (2nd Cir. 1998). See *Dean* v. *Coughlin*, 804 F. 2d 207, 213 (2nd Cir. 1986) (Second Circuit has "cautioned . . . not to use a sledgehammer where a more delicate instrument will suffice . . . .")

This Court has found, based upon the undisputed facts, that the agency's determination that plaintiff committed an act of child abuse was objectively reasonable. That aspect of this Court's decision was affirmed on appeal. Given the vital public importance to protect children by listing perpetrators on the registry and the more than adequate state administrative hearing available to the plaintiff, the appropriate narrowly tailored remedy is to afford the plaintiff an administrative hearing to challenge DCF's substantiation. Assuming *arguendo* that the hearing officer erred in staying the plaintiff's hearing for a seven month period and that action amounts to a constitutional violation, the plaintiff is entitled to an administrative hearing; nothing more.

In this regard, there is no case or controversy since DCF was willing to afford the plaintiff a hearing after the criminal charges were dismissed in September, 2001 and throughout this litigation. *See Carroll* v. *Ragaglia*, 292 F. Supp. 2d at 342.

## VII. CASE SHOULD BE DISMISSED UNDER PRINCIPLES OF ABSTENTION.

"*Younger* is a court-made rule of abstention built around the principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." *Maymo-Melendez* v. *Alvarez-Ramirez*, 364 F. 3d 27 (1st Cir. 2004), *cert. denied*, 2004 U.S. LEXIS 6597 (U.S., Oct. 4, 2004). See *Younger* v. *Harris*, 401 U.S. 37 (1971).[19]

*Younger* abstention is applicable to administrative proceedings. See *Huffman* v. *Pursue, Ltd.*, 420 U.S. 592, 603-605 (1975) (applying *Younger* to a civil proceeding initiated by the state to enforce a nuisance statute); *Ohio Civil Rights Comm'n* v. *Dayton Christian Sch., Inc.*, 477 U.S. 619, 623-627 (1986) (applying *Younger* to state administrative proceedings based on alleged sex discrimination); *Middlesex County Ethics Comm.* v. *Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (applying *Younger* to administrative proceedings brought by state ethics committee to discipline an attorney).

There is no doubt that the protection of children is of paramount public importance to the State of Connecticut. See Conn. Gen. Stat. § 17a-101 (a).  See *Moore* v. *Sims*, 442 U.S. 415, 429-35 (1979) (deference to state courts particularly appropriate in areas of traditional state concern to allow the informed evolution of state policy by state tribunals).

 According to the plaintiff, the administrative proceeding requested by the plaintiff was commenced but was stayed over the plaintiff's objection during the pendency of criminal

---

[19] Abstention was pleaded as defendants' sixth affirmative defense.

charges. (Pl's Memo, p. 10)   The plaintiff never sought to reactivate his hearing once the criminal charges were dismissed. *See Carroll* v. *Ragaglia*, 292 F. Supp. 2d at  34 n. 16.  If the plaintiff elects to request that his administrative hearing resume, there will be ongoing administrative proceedings.  However, that is entirely in the plaintiff's hands.

There is no bar to raising federal constitutional claims in such a proceeding.  *Moran* v. *Conn. Dept. of Public Health*, 954 F. Supp. 484, 488-489 (1997). See *Daley* v. *DelPonte*, 225 Conn. 499 (1993) (federal constitutional claims decided in administrative appeal). "[P]principles of federalism generally do not bar state courts from deciding questions of federal law. . . .Interpretation of federal law is the proprietary concern of state, as well as federal, courts." (Citations and quotation marks omitted) *State* v. *Sebastian*, 243 Conn. 115, 140 (1997), *cert. denied*, 522 U.S. 1077 (1998).

In light of this Court's previous ruling and the Second Circuit's decision no claim for monetary relief survives, only a claim for injunctive relief specific to the plaintiff. See *Rivers* v. *McLeod*,  252 F. 3d 99 (2nd Cir. 2002).  Notwithstanding the plaintiff's failure to pursue his administrative remedy or, for that matter, judicial relief in state court, *Younger* abstention is appropriately applied to this case.  See *Maymo-Melendez* v. *Alvarez-Ramirez*, 364 F. 3d 27 (1st Cir. 2004).  The plaintiff does not have "an automatic right to detour into federal court" because he was unhappy with DCF's initial decision. *Id*., 35-36.  The sole remaining claim for injunctive relief should be dismissed.

### **CONCLUSION:**

The DCF policy allowing a hearing officer to stay a civil administrative hearing pending the outcome of criminal charges is grounded in good public policy and consistent with due process.  The hearing officer, who is not named as a defendant in this litigation, properly

exercised his discretion in ordering the administrative hearing stayed.  In any event, because of the public nature of the criminal charges the plaintiff cannot credibly claim that his employment prospects were burdened by being listed on the central registry while the criminal charges were pending.  Even assuming *arguendo*, that the plaintiff's right to due process was violated, the appropriate narrowly tailored remedy is for the plaintiff to be allowed to contest the substantiation of abuse in an administrative hearing.  Such a remedy allows the plaintiff to challenge the accuracy of agency's determination and is respectful of the state's role in this important area of state interest, the protection of children.  To entertain the plaintiff's claim for this Court to hold a protracted evidentiary hearing on this matter is both unnecessary as a matter of law and would federalize this area of traditional state concern.

For the reasons stated above and in the defendants' main brief and reply brief in support of their motion for summary judgment, the defendants respectfully move for summary judgment in their favor.

<div style="margin-left:50%">

DEFENDANTS

KRISTINE D. RAGAGLIA
JUDITH FRITZ
LAURA CURRAN
(In Their Official and Individual Capacity)


RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____
    John E. Tucker
    Assistant Attorney General
    Federal Bar No. ct04576
    110 Sherman Street
    Hartford, CT  06l05
    Tel: (860) 808-5480
    Fax: (860) 808-5595

</div>

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 16th day of March, 2005, first class postage prepaid to:

James A. Wade, Esq.
Marion Manzo, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

_____

John E. Tucker
Assistant Attorney General